# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### CINCINNATI DIVISION

| | |
|---|---|
| **HEATHER DAVIS, ANDREW HOLDER, AMY TODD, HEATHER BEAUFORT, TARA SMITH, and ELINOR LEE Individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Case No. _____** |
| **BON SECOURS MERCY HEALTH, INC.,** | **JURY TRIAL DEMANDED** |
| **and** | |
| **ROPER ST. FRANCIS HEALTHCARE,** | |
| **Defendants.** | |

## 29 U.S.C. § 216(b) and FRCP 23
## CLASS ACTION COMPLAINT

Plaintiffs—Heather Davis, Andrew Holder, Amy Todd, Heather Beaufort, Tara Smith, and Elinor Lee—bring this action individually and on behalf of all current and former hourly employees with patient care responsibilities (collectively, "Plaintiffs and the Putative Plaintiffs"), who worked for Bon Secours Mercy Health, Inc. ("BSMH"), and Roper St. Francis Healthcare ("RSFH") (collectively "Defendants") anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and unpaid compensation, liquidated damages, and attorneys' fees and costs pursuant to the South Carolina Payment of Wages Act ("SCPWA" or "South Carolina Act"), S.C. CODE ANN. §§ 41-10-10, *et seq.* and

the Virginia Overtime Wage Act ("VOWA") V.A. CODE ANN. § 40.1-2.9.2; and the New York Payment of Wages Act, N.Y. LAB. LAW § 190–199 ("NYPWA"); and the New York Minimum Wage Act, N.Y. LAB. LAW § 651–665 ("NYMWA") (the NYPWA and NYMWA are collectively referred to as the "New York Acts").

## I.
## OVERVIEW

1.    This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA and class actions pursuant Fed R. Civ. P. 23 for state laws of South Carolina, Virginia, and New York, to recover unpaid wages and other applicable penalties.

2.    Plaintiffs and the Putative Plaintiffs are those similarly situated persons who worked for Defendants at any time during the relevant time periods through the final disposition of this matter, who have not been paid for all hours worked nor the correct amount of wages, including overtime, in violation of state and federal law.

3.    Although Plaintiffs and the Putative Plaintiffs have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiffs and the Putative Plaintiffs were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.    Likewise, Plaintiffs and the Putative Plaintiffs worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5.    During the relevant time period(s), Defendants knowingly and deliberately failed to compensate Plaintiffs and the Putative Plaintiffs for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6.    Specifically, Defendants' regular practice—including during weeks when Plaintiffs and the Putative Plaintiffs worked and recorded hours in excess of forty (40) (not counting hours worked

"off-the-clock")—was (and is) to deduct a 30-minute meal-period from Plaintiffs and the Putative Plaintiffs' daily time even though they regularly performed compensable work, patient care, (and continue to perform) "off the clock" through their respective meal-period breaks.

7. Defendants also paid (and continue to pay) the Plaintiffs and the Putative Plaintiffs non-discretionary bonuses and shift differentials but failed (and continue to fail) to include the bonuses and shift differentials in the Plaintiff and the Putative Plaintiffs' regular rates of pay for purposes of calculating and paying the correct rate of overtime compensation.

8. Defendants also paid (and continue to pay) the Plaintiffs and the Putative Plaintiffs different hourly rates during their shifts but failed (and continue to fail) to and did not used the blended rate method when calculating for purposes of calculating and paying the correct rate of overtime compensation.

9. Finally, Defendants employ an improper and non-neutral time rounding policy that, over time, fails to compensate the Plaintiff and Putative Plaintiffs for all the time they have actually worked.

10. The effect of Defendants' practices were (and are) that all compensable time worked by Plaintiffs and the Putative Plaintiffs was not (and is not) counted and paid; thus, Defendants failed to properly compensate Plaintiffs and the Putative Plaintiffs for all hours worked and failed to properly calculate Plaintiffs and the Putative Plaintiffs' straight time and overtime under the FLSA and applicable state law.

11. Defendants knowingly and deliberately failed to compensate Plaintiffs and the Putative Plaintiffs for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

12. Plaintiffs and the Putative Plaintiffs did not and currently do not perform work that meets the definition of exempt work under the FLSA or applicable state laws.

13.     Plaintiffs and the Putative Plaintiffs seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid compensation and other damages owed under the state laws of South Carolina, Virginia, and New York as class actions pursuant to FED. R. CIV. P. 23.

14.     Plaintiffs also pray that all similarly situated workers be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

15.     Plaintiffs also pray that the Rule 23 classes are certified as defined herein, with Plaintiff Davis and Plaintiff Holder named as the South Carolina Class Representative; Plaintiff Todd, Plaintiff Beaufort and Plaintiff Smith named as the Virginia Class Representative; and Plaintiff Lee named as the New York Class Representative.

## II.
## THE PARTIES

1.     Plaintiff—Heather Davis ("Davis")—was employed by Defendants in South Carolina during the relevant time period(s). Specifically, she was employed by Defendant RSFH, 2095 Tecklenberg Dr., Charleston SC  as a non-exempt Nurse from approximately August 2020 until April 2024. Plaintiff Davis did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

2.     Plaintiff—Andrew Holder ("Holder")—was employed by Defendant BSMH in South Carolina during the relevant time period(s). Specifically, he was employed by Defendant BSMH *dba* St. Francis Downtown ("BSMH-SFD"), 1 St. Francis Drive, Greenville SC 29601 as a non-exempt Nurse from approximately April 2008 until November of 2022. Plaintiff Holder did not receive

---

[1] The written consent of Heather Davis is attached hereto as Exhibit "A."

compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

3.    Plaintiff—Amy Todd ("Todd")—was employed by Defendants in Virginia during the relevant time period(s). Specifically, she was employed by Defendant BSMH *dba* Virginia Orthopedic & Spine Specialists ("BSMH-VOSS") 1009 Centerbrooke lane, Suffolk, VA 23434 as a non-exempt Xray Technician from approximately May 2008 until present. Plaintiff Todd did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

4.    Plaintiff—Heather Beaufort ("Beaufort")—was employed by Defendants in Virginia during the relevant time period(s). Specifically, she was employed by Defendant BSMH *dba* Virginia Orthopedic & Spine Specialists ("BSMH-VOSS") 1009 Centerbrooke lane, Suffolk, VA 23434. Plaintiff Beaufort did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[4]

5.    Plaintiff—Tara Smith ("Smith")—was employed by Defendants in Virginia during the relevant time period(s). Specifically, she was employed by Defendant BSMH *dba* Southside Medical Center ("BSMH-SMC"), 200 Medical Park Blvd., Petersberg VA 238052 as a non-exempt Nurse from approximately August of 2019 until approximately April of 2023. Plaintiff Smith did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[5]

---

[2] The written consent of Andrew Holder is attached hereto as Exhibit "B."

[3] The written consent of Amy Todd is attached hereto as Exhibit "C."

[4] The written consent of Heather Beaufort is attached hereto as Exhibit "D."

[5] The written consent of Tara Smith is attached hereto as Exhibit "E."

6.     Plaintiff—Elinor Lee ("Lee")—was employed by Defendants in New York during the relevant time period(s). Specifically, she was employed by Defendant BSMH *dba* Community Hospital ("BSMH-CH"), 160 E. Main St., Port Jervis, New York 12771 as a non-exempt Respiratory Therapist from approximately January 2011 until approximately November 2022. Plaintiff Lee did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[6]

7.     The FLSA Collective Members are those current and former hourly employees with patient care responsibilities who were employed by Defendants at any time from June 4, 2021, through the final disposition of this matter, who have been subjected to the same illegal pay system under which Plaintiffs worked and were paid, and did not sign arbitration agreements.

8.     The South Carolina Class Members are those current and former current and former hourly employees with patient care responsibilities who were employed by Defendants in the State of South Carolina at any time from June 4, 2021, through the final disposition of this matter, and who have been subjected to the same illegal pay system under which Plaintiff Davis and Plaintiff Holder worked and were paid and did not sign arbitration agreements.

9.     The Virginia Class Members are those current and former current and former hourly employees with patient care responsibilities who were employed by Defendants in the Commonwealth of Virginia at any time from June 4, 2021, through the final disposition of this matter, and who have been subjected to the same illegal pay system under which Plaintiff Todd, Plaintiff Beaufort and Plaintiff Smith worked and were paid and did not sign arbitration agreements.[7]

---

[6] The written consent of Elinor Lee is attached hereto as Exhibit "F."

[7] Plaintiffs did not sign an arbitration agreement with Defendants, information that was confirmed through correspondence with Defendants' counsel.

10.     The New York Class Members are those current and former current and former hourly employees with patient care responsibilities who were employed by Defendants in the State of New York at any time from June 4, 2018, through the final disposition of this matter, and who have been subjected to the same illegal pay system under which Plaintiff Lee worked and was paid and did not sign arbitration agreements.[8]

11.     Defendant Bon Secours Mercy Health, Inc. is a foreign non-profit corporation licensed to do business in the State of Ohio and may be served with process at: **Corporation Service Company 1160 Dublin Road, Suite 400, Columbus, Ohio 43215.**

12.      Defendant Roper St. Francis Healthcare is a foreign non-profit corporation licensed to do business in the State of Ohio and may be served with process at: **Corporation Service Company 1160 Dublin Road, Suite 400, Columbus, Ohio 43215.**

13.     Defendants are joint employers pursuant to the FLSA. They have common ownership, oversight and control over Plaintiff and the Putative Plaintiffs. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

### III.
### JURISDICTION & VENUE

14.     This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

15.     This court has original jurisdiction over the South Carolina state law claims, the Virginia state law claims, and the New York state law claims pursuant to the Class Action Fairness

---

[8] Plaintiffs did not sign an arbitration agreement with Defendants, information  that was confirmed through correspondence with Defendants' counsel.

Act ("CAFA"), 28 U.S.C. 1332(d), because the claims of the Putative Class Members together exceed $5,000,000.00 and there is minimal diversity between the Parties.

16.     This Court also has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367.

17.     Plaintiffs and the Putative Plaintiffs have not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

18.     This Court has general personal jurisdiction over the Defendants because their corporate headquarters are both located in Cincinnati, Ohio.

19.     Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391 because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

20.     Additionally, Defendants maintain their company headquarters in Cincinnati, Ohio, which is located within this District and Division.

## IV.
## BACKGROUND FACTS

21.     Defendant BSMH operates approximately forty nine  healthcare facilities providing healthcare services to its patients throughout the United States.[9]

22.     Defendant BSMH healthcare facilities span seven states – Florida, Kentucky, Maryland, New York, Ohio, South Carolina, and Virginia.

23.     Defendant BSMH operate hospitals, freestanding emergency departments, specialty and primary case locations, lab facilities and imaging centers.

24.     Defendant RSFH is a wholly owned subsidiary of Defendant BSMH and operates some of the healthcare facilities owned by Defendant BSMH.

---

[9] https://bsmhealth.org/who-we-are/

**Defendants Are Joint Employers**

25.     Defendants are joint employers pursuant to federal and state law.

26.     Defendants are integrated companies that share customers, properties, employees, and all other assets.

27.     Defendant BSMH is the ultimate legal parent of Defendant RSFH and all other facilities it operates and does business as, including medical facilities not currently named as defendants.

28.     Defendant BSMH has the power to hire and fire any and all of RSFH's employees and BSMH's subsidiaries employees.

29.     Defendant BSMH supervises and controls all of Defendant RSFH's and BSMH's subsidiaries employees' work schedules and conditions of employment.

30.     Defendant BSMH determines the rate and method of payment for all employees working under RSFH and BSMH's subsidiaries.

31.     On information and belief, Defendant BSMH made the decision for its subsidiaries and affiliates—including but not limited to Defendant RSFH—to pay bonuses and shift differentials to the Plaintiff and Putative Plaintiffs and to not include them in their regular rate of pay for purposes of calculating their correct overtime rates.

32.     On information and belief, Defendant BSMH also created for its subsidiaries and affiliates—including but not limited to Defendant RSFH—the automatic meal break policy and time rounding policies at issue in this matter and made the decision for its subsidiaries and affiliates—including but not limited to Defendant RSFH—to utilize those policies in ways that underpaid the Plaintiff and Putative Plaintiffs.

33.     Defendant BSMH maintains employment records for its subsidiaries and affiliates—including but not limited to Defendant RSFH  direct employees.

34.     Specifically, BSMH controls the Corporate HR Department which maintains all the employment records for its subsidiaries and affiliates—including but not limited to Defendant RSFH's employees.

35.     Defendant BSMH manages key internal relationships to Defendants—that is, Defendant BSMH directs the financials of its subsidiaries and affiliates including but not limited to Defendant RSFH and controls the pay, hours and schedules of Plaintiff and the Putative Plaintiffs.

36.     Moreover, both Defendants have (or had) the power to hire and fire Plaintiffs and the Putative Plaintiffs; supervise and control Plaintiffs and the Putative Plaintiffs' work schedules and conditions of their employment; determine their rate and method of payment, and jointly maintain their employment records.

37.     As a result, Defendants are responsible, both individually and jointly, for compliance with all the applicable provisions of the FLSA, South Carolina, Virginia, and New York state law with respect to the entire employment for the workweeks at issue in this case.

### Plaintiffs and the Putative Plaintiffs are Similarly Situated

38.     To provide their services, Defendants employed (and continue to employ) numerous non-exempt hourly employees with patient care responsibilities—including Plaintiffs and the individuals that make up the putative collective and classes.

39.     Plaintiffs and the Putative Plaintiffs were employed by Defendants as non-exempt Nurses who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

40.     Plaintiffs and the Putative Plaintiffs were responsible for the care and well-being of Defendants' patients.

41.     While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work. Importantly, none of the FLSA exemptions relieving

covered employers (such as Defendants) of the statutory duty to pay their employees overtime at one and one-half times the regular rate of pay apply to Plaintiffs or the Putative Plaintiffs.

42.     Plaintiffs and the Putative Plaintiffs are similarly situated because they typically worked schedules that required them to work more than forty (4)) hours in a workweek..

43.     Plaintiffs and the Putative Plaintiffs are similarly situated because the Defendants did not pay them for their auto-deducted 30- or 60-minutes lunches that were regularly interrupted by work.

44.     Plaintiffs and the Putative Plaintiffs are similarly situated because the Defendants suffered or permitted them to work "off-the-clock" before and after the start of their shifts.

45.     Plaintiff and the Putative Plaintiffs are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Defendants resulting in the complained of FLSA and state law violations.

46.     Plaintiff and the Putative Plaintiffs are similarly situated with respect to their job duties—that is, they all provided health care services to patients at Defendants' facilities.

47.     Plaintiff and the Putative Plaintiffs are similarly situated with respect to their pay structure in that they are all paid on an hourly basis, receive non-discretionary bonuses, have their time rounded, and Defendants automatically deduct thirty (30) minutes for a meal period each workday.

48.     Plaintiff and the Putative Plaintiffs are similarly situated with respect to Defendants' policies (and practices) resulting in the complained of FLSA and state law violations.

**Unpaid Meal Breaks**

49.     Defendants have a policy wherein they automatically deduct one 30-minute meal period from Plaintiffs and the Putative Plaintiffs' daily time.

50.     Defendants' Meal Break policy is a per se violation of the FLSA and state wage law in that it requires the Plaintiffs and Putative Plaintiffs to not report that they did not get a bona fide 30

minute meal break if they worked, performed patient care, for up to and including ten (10) minutes of their unpaid lunch.

51.     Defendants' automatic thirty (30) minute meal period deduction resulted (and continues to result) in Plaintiffs and the Putative Plaintiffs working straight time hours and overtime hours for which they were (and are) not compensated at the rates required by the FLSA and applicable state law.

52.     Defendants were (and continue to be) aware that Plaintiffs and Putative Plaintiffs regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA and relevant state law.

53.     Defendants knew Plaintiffs and Putative Plaintiffs did not take breaks because the Plaintiff and the Putative Plaintiffs informed their supervisors that they regularly did not take a meal break.

54.     As a result of Defendants' failure to compensate Plaintiffs and Putative Plaintiffs for compensable work performed "off the clock," such as during their unpaid meal break, Plaintiff and the Putative Plaintiffs worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and applicable state law.

**Defendants Failed to Include Non-Discretionary Bonuses in the Regular Rate**

55.     Defendants also paid out non-discretionary bonuses and shift differentials based on set criteria but failed to include these bonuses and shift differentials in the Plaintiffs and Putative Plaintiffs' regular rates of pay.

56.     The non-discretionary bonuses and shift differentials were based upon pre-determined criteria established by Defendants.

57.     When Plaintiff and the Putative Plaintiffs met the criteria, they were entitled to receive these non-discretionary bonuses and shift differentials.

58.     Pursuant to 29 C.F.R. § 778.209, these non-discretionary bonuses (and any other non-discretionary compensation) should have been included in Plaintiffs and Putative Plaintiffs' regular rates of pay before any and all overtime multipliers were applied.

**Defendants Failed to Blend the Various Hourly Rates Worked During a Workweek**

59.     Defendants, during the Relevant Time Period(s) deemed certain hours during a workweek as "Critical Staffing" hours and incentivized Plaintiffs and Putative Plaintiffs to work times they were not scheduled to work or remain on shift after their shift ended.

60.     Defendants established different, increased hourly rates for work other than Plaintiffs' and Putative Plaintiffs' scheduled work as an incentive to work critical staffing hours based on the level of Defendants' critical staffing needs.

61.     Defendants, instead of blending the different rates Plaintiffs and Putative Plaintiffs worked in a workweek for purposes of paying overtime, it created a fiction that the increased hourly rate for incentivized critical staffing hours were "shift differentials."

62.     Pursuant to 29 C.F.R. § 778.115, required Defendants to add up all of the compensation during the workweek from all such rates and then divide by the total number of hours worked at all hourly classifications to arrive at the blended rate from which Defendant would use to calculate the regular rate.

63.     Defendants, in violation of the FLSA and applicable state law, treated the various hourly rates as shift differentials and included them with the lawful shift differentials when calculating the regular rate. This violation permitted Defendants to add the shift differential to the Plaintiffs and Putative Plaintiffs base hourly rate instead of the blended, weighted hourly rate to determine the regular rate.

**Improper Non-Neutral Rounding Policy**

64. Defendants employ a policy that rounds the Plaintiffs and Putative Plaintiffs' clock in and clock out times to the nearest fifteen-minute increment.

65. For example, when a Plaintiff or a Putative Plaintiff clocks in at 6:38 a.m., Defendants rounds their time up to 6:45 a.m., resulting in that Putative Plaintiffs not being paid for the seven (7) minutes of work performed from 6:38 a.m. to 6:45 a.m.

66. Similarly, should a Plaintiff or a Putative Plaintiffs clock in at 6:46 a.m., Defendants would round their time down to 6:45 a.m. and the Putative Plaintiffs would be paid for one (1) extra minute.

67. To be valid, rounding policies must ensure that, over a period of time, an employee is fully compensated "for all the time they have actually worked." 29 C.F.R. 785.48. The policy must be "neutral, both facially and as applied." *See Dorsey v. Aviva Metals, Inc.*, No. 1:20-CV-02014, 2022 WL 4536393, at *5 (N.D. Ohio Sept. 28, 2022).

68. Defendants' rounding policy is not neutral on its face or in its application because Plaintiffs and Putative Plaintiffs are told to clock in and clock out during times that are rounded off and that they are subject to discipline should they clock in or out during a time that would benefit them. As a result of Plaintiffs and Putative Plaintiffs clock in and out during time periods that round against them and benefit Defendants.

69. Specifically, Defendants' polices state their employees may clock in up to seven (7) minutes prior to their shift start time (which rounds against them) but are subject to discipline should they clock in eight (8) or more minutes early (which would round in their favor).

70. Defendants' policies also state employees are subject to discipline in the form of an occurrence should they clock in even one (1) minute after the start of their shift starts (which would round in their favor).

71.     Read together, Defendants' policies contain a facially non-neutral rounding policy. Employees are encouraged to clock in only during times in which their work is rounded down, benefiting Defendants. Employees are further discouraged and disciplined for clocking in during times that rounding would benefit them.

72.     Plaintiff and Putative Plaintiffs were also regularly told by their supervisors that they must clock in no later than five (5) minutes prior to their shift start time.

73.     Defendants encouraged early clock in times because, prior to the start of a shift, the Plaintiff and Putative Plaintiffs typically have shift hand off. During a shift handoff, the nurse being relieved of duty informs the reliving nurse—Plaintiff or Putative Plaintiffs —of the status of their assigned patients and duties.

74.     Clocking in several minutes prior to the shift start time facilitates the shift handoff as it allows the Plaintiff and the Putative Plaintiffs to know the status of their patients and work.

75.     As most shifts started fifteen minutes from the top of the hour, this policy resulted in the Plaintiff and Putative Plaintiffs' regularly clocking in five (5) to seven (7) minutes before the nearest fifteen-minute increment of time, and losing those five (5) to seven (7) minutes of work nearly every shift.

76.     Defendants' employees are not permitted to clock in eight (8) minutes or more before their shift.

77.     Clocking in eight (8) or more minutes before their shift start time would result in Defendants crediting the Plaintiff and Putative Plaintiffs for extra time.

78.     The Plaintiff and Putative Plaintiffs regularly lost five (5) to seven (7) minutes of work time each shift and rarely ever gained time as a result of Defendants' rounding policy.

79. These policies also apply similarly to clock out times. Plaintiffs and Putative Plaintiffs were (and continue to be) told they can clock out no more than eight (8) minutes after their shift end time—which rounds in Defendants' favor.

80. Plaintiffs and Putative Plaintiffs were also told they were not allowed to clock out even one (1) minute before their shift end time—which would have rounded in their favor.

81. Because of these policies and directives from Defendants, Plaintiffs and Putative Plaintiffs typically clocked in during times in which the rounding policy worked against them.

82. In its application, Defendants' rounding policy—over time—resulted in the failure to compensate the Plaintiffs and Putative Plaintiffs for all hours actually worked—both compensable overtime hours and straight time hours.

83. As a result of Defendants' rounding policy and its failure to compensate Plaintiff sand Putative Plaintiffs for compensable work performed during their shift, Plaintiffs and Putative Plaintiffs worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and applicable state wage law.

84. Specifically, when Plaintiffs and Putative Plaintiffs worked three (3) twelve-hour shifts in a week and did not receive a meal break during any shift and had their compensable work hours rounded down, Defendants' policies resulted in Plaintiff and the Putative Plaintiffs not being paid for one and one-half to two hours of compensable straight time work.

85. When Plaintiffs and Putative Plaintiffs worked four (4) twelve-hour shifts in a week and did not receive a meal break during any shift and had their compensable work hours rounded down, Defendants' policies resulted in Plaintiffs and Putative Plaintiffs not being paid for two to two and half hours of compensable overtime work.

86. Defendants knew or should have known that it was not (and is not) compensating Plaintiffs and Putative Plaintiffs for the proper amount of overtime compensation in violation of the FLSA and applicable state law.

87. Defendants' actions therefore constitute willful violations under the law and were not made in good faith.

88. Defendants' failure to compensate Plaintiffs and Putative Plaintiffs overtime compensation at a rate of one and one-half times their regular rates of pay violated (and continues to violate) the FLSA and applicable state law.

89. Defendants knew or should have known that it was not (and is not) compensating Plaintiff and Putative Plaintiffs for the proper amount of overtime compensation in violation of the FLSA and relevant state law.

90. Defendants knew or should have known that their failure to pay the correct amount of straight time and overtime to Plaintiffs and Putative Plaintiffs would cause, did cause, and continues to cause financial injury to Plaintiffs and Putative Plaintiffs.

91. Because Defendants did not pay Plaintiffs and Putative Plaintiffs time and a half for all hours worked in excess of forty (40) in a workweek, Defendants' pay policies and practices willfully violated (and continue to violate) the FLSA and applicable state laws.

92. Because Defendants did not pay Plaintiffs and Putative Plaintiffs for all straight time worked, Defendants' pay policies and practices violated (and continue to violate) applicable state laws.

93. Because Defendants did not pay the Plaintiffs and Putative Plaintiffs for all hours worked, and failed to include non-discretionary bonuses in the calculation of overtime, Defendant failed to provide accurate wage statements as required by the SCPWA. Specifically, Plaintiff and Putative Plaintiffs wage statements did not show all hours worked and used the incorrect rate of overtime pay.

94.     Plaintiffs and Putative Plaintiffs seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid straight time and relevant penalties pursuant to applicable state law.

**V.**
**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

95.     The preceding paragraphs are incorporated as though fully set forth herein.

96.     The "Employees Entitled to Notice" are defined as:

**ALL CURRENT AND FORMER HOURLY EMPLOYEES WITH PATIENT CARE RESPONSIBILITIES WHO WORKED FOR BON SECOURS MERCY HEALTH, INC., AND ROPER ST. FRANCIS HEALTHCARE, AT ANY TIME FROM JUNE 4, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER AND WHO DID NOT SIGN AN ARBITRATION AGREEMENT.**

97.     At all material times, Defendants have been joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

98.     At all material times, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

99.     At all material times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

100.     Specifically, Defendants operate medical facilities and treat patients from across the United States, transport materials through commerce and on the interstate highways, and conduct transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail, and the Internet.

101.     During the respective periods of Plaintiffs and the Employees Entitled to Notice' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce (as described above) for purposes of the FLSA.

102.     In performing work for Defendants, Plaintiffs and the Employees Entitled to Notice were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

103.     Specifically, Plaintiff and the Employees Entitled to Notice are (or were) hourly employees who assisted Defendants' customers and employees throughout the United States. 29 U.S.C. § 203(j).

104.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants.

**B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

105.     All previous paragraphs are incorporated as though fully set forth herein.

106.     Defendants violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

107.     Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of failing to pay Plaintiffs and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

108.     Defendants knew or should have known their pay practices were in violation of the FLSA.

109.     Defendants are sophisticated parties and employers, and therefore knew (or should have known) their pay policies were in violation of the FLSA.

110.     Plaintiffs and the Employees Entitled to Notice, on the other hand, are (and were) unsophisticated employees who trusted Defendants to pay them according to the law.

111.     The decision and practice by Defendants to not pay Plaintiffs and the Employees Entitled to Notice overtime for all hours worked over forty (40) each week was willful and was not reasonable or in good faith.

112.     Accordingly, Plaintiffs and the Employees Entitled to Notice are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees, and costs.

## C.     COLLECTIVE ACTION ALLEGATIONS

113.     All previous paragraphs are incorporated as though fully set forth herein.

114.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring this action collectively on behalf of Defendants' employees who are (or were) similarly situated to Plaintiffs with regard to the work they performed and the manner in which they were paid.

115.     Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

116.     Defendants' failure to pay Plaintiffs and the Employees Entitled to Notice overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Defendants, and does not depend on the personal circumstances of Plaintiffs or the Employees Entitled to Notice.

117.     Thus, Plaintiffs' experiences are typical of the experiences of the Employees Entitled to Notice.

118.     The specific job titles or precise job requirements of the various Employees Entitled to Notice does not prevent collective treatment.

119.     All of the Employees Entitled to Notice—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

120.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

121.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

122.     Accordingly, notice of the action should be promptly sent to the similarly situated Employees Entitled to Notice as in Paragraph 96.

<u>**SECOND CAUSE OF ACTION**</u>
**(Class Action Alleging Violations of the SCPWA)**

A.     **SCPWA COVERAGE**

123.     All previous paragraphs are incorporated as though fully set forth herein.

124.     The South Carolina Class is defined as:

**ALL CURRENT AND FORMER HOURLY EMPLOYEES WITH PATIENT CARE RESPONSIBILITIES WHO WERE EMPLOYED BY BON SECOURS MERCY HEALTH, INC., AND ROPER ST. FRANCIS**

**HEALTHCARE, IN THE STATE OF SOUTH CAROLINA, AT ANY TIME FROM JUNE 4, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER AND WHO DID NOT SIGN AN ARBITRATION AGREEMENT ("South Carolina Class Members").**

125.    At all material times, Defendants have each been an "employer" as defined by the SCPWA. *See* S.C. CODE ANN. § 41-10-10(1).

126.    At all material times, Plaintiff Davis, Plaintiff Holder, and the South Carolina Class Members were "employed" by Defendants as defined within the SCPWA. *See* S.C. CODE ANN. §§ 41-10-10 to 110.

127.    Plaintiff Davis, Plaintiff Holder, and the South Carolina Class Members are "employees" within the meaning of the SCPWA and are not free from the control and direction of Defendants.

**B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE SCPWA**

128.    All previous paragraphs are incorporated as though fully set forth herein.

129.    During the course of their employment, Defendants agreed to pay Plaintiff Davis, Plaintiff Holder, and each South Carolina Class Member "wages" as defined in the SCPWA to compensate them for labor rendered to Defendants. *See* S.C. CODE ANN. § 41-10-10(2).

130.    Plaintiff Davis, Plaintiff Holder, and each SCPWA Class Member accepted Defendants' offer.

131.    The SCPWA requires employers, like Defendants, to "notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment" and the "employer shall furnish each employee with an itemized statement showing his gross pay and the deductions made from his wages for each pay period." S.C. CODE. ANN. § 41-10-40(C).

132.    The SCPWA also provides an employer, like Defendants, "shall not withhold or divert any portion of the employee's wages unless the employer is required or permitted to do so by state or federal law." S.C. CODE. ANN. § 41-10-40(C).

133.    Further, "any changes [to] the terms [of wages] must be made in writing at least seven calendar days before they become effective."  S.C. CODE. ANN. § 41-10-30(A).

134.    In violation of the SCPWA, Defendants willfully failed to provide Plaintiff Davis, Plaintiff Holder,  and the other South Carolina Class Members, at the time of their hiring, proper notice of the normal hours and wages agreed upon and the time and place of payment, nor did Defendants provide them with compliant wage statements for each of their pay periods as required by law because the notice and wage statements failed to include hours worked off the clock due to Defendants' automatic meal break deductions and time rounding policies, and failed to display the correct rate of overtime because of Defendants' failure to correctly include bonuses and shift differentials in the overtime rate calculation.

135.    Defendants also willfully failed to pay Plaintiff Davis, Plaintiff Holder,  and the South Carolina Class Members all compensation for "wages" due and owing to them, in violation of the SCPWA. *See* S.C. CODE. ANN. § 41-10-10(2).

136.    Additionally, Defendants failed to provide Plaintiff Davis, Plaintiff Holder,  and the South Carolina Class Members with at least seven days' advance written notice of the deductions or the amounts of the deductions that it made to their paychecks.

137.    Defendants have withheld wages of Plaintiff Davis, Plaintiff Holder,  and the South Carolina Class Members without providing advance notice of such amounts and absent any lawfully sufficient reason for such conduct.

138.    In violating the SCPWA, Defendants acted willfully, without a good faith basis, and with reckless disregard of clearly applicable South Carolina law.

139.    As a direct and proximate result of Defendants' willful conduct, Plaintiff Davis, Plaintiff Holder,  and the South Carolina Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled

damages, including monetary damages in the amount of three (3) times the amount of their unpaid wages as well as costs and reasonable attorneys' fees pursuant to the SCPWA. S.C. CODE. ANN. § 41-10-80.

140.    Defendants are in possession and control of necessary documents and information from which Plaintiff Davis and Plaintiff Holder would be able to precisely calculate damages.

141.    The proposed class of putative class members sought to be certified pursuant to the SCPWA is defined in Paragraph 123.

142.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

## C.    SCPWA CLASS ALLEGATIONS

143.    All previous paragraphs are incorporated as though fully set forth herein.

144.    Plaintiff Davis, Plaintiff Holder,  and the South Carolina Class Members bring their SCPWA claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by Defendants to work in South Carolina since June 4, 2021.

145.    Class action treatment of Plaintiff Davis, Plaintiff Holder,  and the South Carolina Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

146.    The number of South Carolina Class Members is so numerous that joinder of all class members is impracticable.

147.    Plaintiff Davis's and Plaintiff Holder's  South Carolina state-law claims share common questions of law and fact with the claims of the South Carolina Class Members.

148.    Plaintiff Davis and Plaintiff Holder are members of the South Carolina Class, their claims are typical of the claims of other South Carolina Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other South Carolina Class Members.

149.     Plaintiff Davis, Plaintiff Holder, and their counsel will fairly and adequately represent the South Carolina Class Members and their interests.

150.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

151.     Accordingly, the South Carolina Class should be certified as defined in Paragraph 123.

**THIRD CAUSE OF ACTION**
**(Class Action Alleging Violations of the VOWA)**

**A.     VMWA COVERAGE**

152.     All previous paragraphs are incorporated as though fully set forth herein.

153.     The Virginia Class is defined as:

**ALL CURRENT AND FORMER HOURLY EMPLOYEES WITH PATIENT CARE RESPONSIBILITIES WHO WERE EMPLOYED BY BON SECOURS MERCY HEALTH, INC. IN THE STATE OF VIRGINIA, AT ANY TIME FROM JUNE 4, 2021, THROUGH THE FINAL DISPOSITION OF THIS MATTER AND WHO DID NOT SIGN AN ARBITRATION AGREEMENT ("Virginia Class Members").**

154.     At all material times, Defendants have each been an "employer" as defined by the VOWA. *See* V.A. CODE ANN. § 40.1-2.9.2.

155.     At all material times, Plaintiff Todd, Plaintiff Beaufort, Plaintiff Smith, and the Virginia Class Members were "employed" by Defendants as defined within the VOWA. *See* V.A. CODE ANN. § 40.1-2.9.2.

156.     Plaintiff Todd, Plaintiff Beaufort, Plaintiff Smith, and the Virginia Class Members are "employees" within the meaning of the VOWA and are not free from the control and direction of Defendants.

**B.      FAILURE TO PAY WAGES IN ACCORDANCE WITH THE VOWA**

157.    All previous paragraphs are incorporated as though fully set forth herein.

158.    Defendants' payment of wages to Plaintiff Todd, Plaintiff Beaufort, Plaintiff Smith, and each Virginia Class Member violated the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. as described above in ¶¶ 95 – 121 and as such violated the VOWA. *See* V.A. CODE ANN. § 40.1-2.9.2.

159.    As a direct and proximate result of Defendants' willful conduct, Plaintiff Todd, Plaintiff Beaufort, Plaintiff Smith, and each Virginia Class Member have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including monetary damages as well as costs and reasonable attorneys' fees pursuant to the VOWA. *See* V.A. CODE ANN. § 40.1-2.9.2.

160.    Defendants are in possession and control of necessary documents and information from which Plaintiff Todd, Plaintiff Beaufort, and Plaintiff Smith would be able to precisely calculate damages.

161.    The proposed class of putative class members sought to be certified pursuant to the VOWA is defined in Paragraph 151.

162.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

**C.      VOWA CLASS ALLEGATIONS**

163.    All previous paragraphs are incorporated as though fully set forth herein.

164.    Plaintiff Todd, Plaintiff Beaufort, Plaintiff Smith, and the Virginia Class Members bring their VOWA claims as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by Defendants to work in Virginia since June 4, 2021.

165.     Class action treatment of Plaintiff Todd, Plaintiff Beaufort, Plaintiff Smith, and the Virginia Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

166.     The number of Virginia Class Members is so numerous that joinder of all class members is impracticable.

167.     Plaintiff Todd's, Plaintiff Beaufort's, and Plaintiff Smith's Virginia state-law claims share common questions of law and fact with the claims of the Virginia Class Members.

168.     Plaintiff Todd, Plaintiff Beaufort, and Plaintiff Smith are members of the Virginia Class, their claims are typical of the claims of other Virginia Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other Virginia Class Members.

169.     Plaintiff Todd, Plaintiff Beaufort, Plaintiff Smith, and their counsel will fairly and adequately represent the South Carolina Class Members and their interests.

170.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

171.     Accordingly, the Virginia Class should be certified as defined in Paragraph 151.

<strong><u>FOURTH CAUSE OF ACTION</u></strong><br>
<strong>(Class Action Alleging Violations of the New York Acts)</strong>

**A.     NEW YORK ACTS COVERAGE**

172.     All previous paragraphs are incorporated as though fully set forth herein.

173.     The New York Class is defined as:

**ALL CURRENT AND FORMER HOURLY EMPLOYEES WITH PATIENT CARE RESPONSIBILITIES WHO WERE EMPLOYED BY BON SECOURS MERCY HEALTH, INC. IN THE STATE OF NEW YORK, AT ANY TIME FROM JUNE 4, 2018, THROUGH THE FINAL DISPOSITION OF THIS MATTER AND WHO DID NOT SIGN AN ARBITRATION AGREEMENT ("New York Class Members").**

174.    At all material times, Defendants have each been an "employer" as defined by the New York Acts. *See* NY LAB. LAW §§ 190(3) and 651(6).

175.    At all material times, Plaintiff Lee and the New York Class Members were Defendants' "employees" as defined within the New York Acts. *See* NY LAB. LAW §§ 190(2) and 651(5).

176.    Defendants—the "employers"—are not exempt from paying wages and overtime benefits under the New York Acts.

**B.      FAILURE TO PAY WAGES IN ACCORDANCE WITH THE NEW YORK ACTS**

177.    All previous paragraphs are incorporated as though fully set forth herein.

178.    During the course of their employment, Defendants agreed to pay Plaintiff Lee and each New York Class Member an hourly rate of pay.

179.    Plaintiff Lee and each New York Class Member accepted Defendants' offer.

180.    Plaintiff Lee's and the New York Class Members' agreed hourly pay rates are therefore "wages" within the meaning of the New York Acts. *See* NY LAB. LAW § 191(1)(d).

181.    The New York Acts also require employers, like Defendants, to pay employees, including Plaintiff Lee and the New York Class Members, overtime wages at a rate not less than 1.5 times their regular rates of pay for all hours worked in excess of forty (40) in a workweek. *See* NY LAB. LAW § 191(1)(d).

182.    Defendants violated, and continue to violate, the New York Acts by failing to pay Plaintiff Lee and the New York Class Members all straight time hours worked at the agreed hourly rate and all overtime wages at rates not less than 1.5 times their regular rates for all hours worked after forty (40) in a workweek, including all off-the-clock hours worked by Plaintiff Lee and the New Yok Class Members. *See* N.Y. COMP. CODES R. & REGS. TIT. 12, § 142-2.2

183.    In violating the New York Acts, Defendants acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

184.     As a direct and proximate result of Defendants' willful conduct, Plaintiff Lee and the New York Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including double damages for unpaid overtime, treble damages for unpaid straight time, and reasonable attorneys' fees pursuant to the New York Acts. *See* NY LAB. LAW § 198; 663(1).

185.     Defendants are in possession and control of necessary documents and information from which Plaintiff Lee would be able to precisely calculate damages.

186.     The proposed class of putative class members sought to be certified pursuant to the New York Acts is defined in Paragraph 170.

187.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

## C.     NEW YORK CLASS ALLEGATIONS

188.     All previous paragraphs are incorporated as though fully set forth herein.

189.     Plaintiff Lee and the New York Class Members bring their New York Acts claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by Defendants to work in New York since June 4, 2018.

190.     Class action treatment of Plaintiff Lee and the New York Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

191.     The number of New York Class Members is so numerous that joinder of all class members is impracticable.

192.     Plaintiff Lee's New York state-law claims share common questions of law and fact with the claims of the New York Class Members.

193.     Plaintiff Lee is a member of the New York Class, her claims are typical of the claims of other New York Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other New York Class Members.

194.     Plaintiff Lee and her counsel will fairly and adequately represent the New York Class Members and their interests.

195.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

196.     Accordingly, the New York Class should be certified as defined in Paragraph 170.

## VI.

## RELIEF SOUGHT

197.     Plaintiffs respectfully pray for judgment against Defendants as follows:

a.     For an Order sending Court Supervised Notice to the Employees Entitled to Notice as defined herein and requiring Defendant to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members.

b.     In the event the Defendant seeks to have discovery on the issues of whether the Employees Entitled to Notice are similarly situated to the Named Plaintiffs, that the Court issue an order tolling the FLSA statute of limitations for the Employees Entitled to Notice as of the filing of this Complaint through the end of the notice discovery period;

c.     Issuing proper notice to the Employees Entitled to Notice at Defendant's expense;

d.     For an Order pursuant to § 16(b) of the FLSA finding Defendants liable for unpaid wages, including unpaid overtime wages, due to Plaintiff (and those FLSA Collective Members

who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those Employees Entitled to Notice who have joined in the suit);

        e.        For an Order certifying the South Carolina Class as defined in ¶ 123, and designating Plaintiff Davis and Plaintiff Holder as Representatives of the South Carolina Class;

        f.        For an Order pursuant to the South Carolina state law awarding Plaintiff Davis, and Plaintiff Holder, and the South Carolina Class Members damages for unpaid wages and all other damages allowed by law;

        g.        For an Order certifying the Virginia Class as defined in ¶ 151, and designating Plaintiff Todd, Plaintiff Beaufort, and Plaintiff Smith as Representatives of the Virginia Class;

        h.        For an Order pursuant to the Virginia state law awarding Plaintiff Todd, Plaintiff Beaufort, Plaintiff Smith, and the Virginia Class Members damages for unpaid wages and all other damages allowed by law;

        i.        For an Order certifying the New York Class as defined in ¶ 170, and designating Plaintiff Lee as Representative of the New York Class;

        j.        For an Order pursuant to the New York state law awarding Plaintiff Lee and the New York Class Members damages for unpaid wages and all other damages allowed by law;

        k.        For an Order awarding the costs of this action;

        l.        For an Order awarding attorneys' fees;

        m.        For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

        n.        For an Order awarding Plaintiff Davis, Plaintiff Holder, Plaintiff Todd, Plaintiff Beaufort, Plaintiff Smith, and Plaintiff Lee a service award as permitted by law;

        o.        For an Order compelling the accounting of the books and records of Defendants, at Defendants' expense (should discovery prove inadequate); and

      p.     For an Order granting such other and further relief as may be necessary and appropriate.

## VII. JURY DEMAND

Plaintiffs demand a jury as to all claims so triable.

Date:  June 18, 2024            Respectfully submitted,

By:   /s/ *Robert E. DeRose*
       **Robert E. DeRose** (OH Bar No. 005214)
       bderose@barkanmeizlish.com
       **BARKAN MEIZLISH DEROSE COX, LLP**
       4200 Regent Street, Suite 210
       Columbus, Ohio 43219
       Telephone: (614) 221-4221
       Facsimile: (614) 744-2300

By:   /s/ *Clif Alexander*
       **Clif Alexander** (application *pro hac vice* forthcoming*)*
       Texas Bar No. 24064805
       clif@a2xlaw.com
       **Austin W. Anderson** (application *pro hac vice* forthcoming)
       Texas Bar No. 24045189
       austin@a2xlaw.com
       **Carter T. Hastings** (application *pro hac vice* forthcoming)
       Texas Bar No. 24101879
       carter@a2xlaw.com
       **ANDERSON ALEXANDER, PLLC**
       101 N. Shoreline Blvd, Suite 610
       Corpus Christi, Texas 78401
       Telephone: (361) 452-1279
       Facsimile: (361) 452-1284

       ***Attorneys in Charge for Representative Plaintiffs and Putative Plaintiffs***